**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ADVISORS EXCEL, L.L.C.,** )<br>    )<br>         Plaintiff,       )<br>    )<br>    v.    )<br>    )<br>**AMERICAN RETIREMENT SYSTEMS, LLC,** )<br>    )<br>         Defendant.     ) | **Case No. 12-4019-RDR** |

### MEMORANDUM AND ORDER

This matter is presently before the court upon defendant American Retirement Systems, LLC's (ARS) motion to dismiss plaintiff Advisors Excel, LLC's amended complaint for lack of personal jurisdiction. ARS filed this motion on May 21, 2012. In its response, Advisors Excel argued, <u>inter alia</u>, that the court should delay its ruling until it could conduct some discovery on the personal jurisdiction issues. The court allowed Advisors Excel to conduct some discovery. Since that time, the parties have filed supplemental briefs. The court is now prepared to rule on the pending motion.

I.

In this action, Advisors Excel, a Kansas corporation, asserts state law claims of defamation, libel, injurious falsehood, deceptive trade practices, unfair competition, and tortious interference; and a federal claim of unfair competition under the Lanham Act, 15 U.S.C. § 1125. In its amended complaint, Advisors Excel alleges that the parties are competing marketing organizations serving independent insurance agents and financial advisers in the life insurance and annuity markets. Advisors Excel contends that

ARS "launched and implemented a scheme to intentionally misrepresent the characteristics, integrity, and ethics of Advisors Excel." This "scheme" was accomplished by sending out a defamatory "Product Alert" to one or more of the parties' current or prospective customers, including William Hull who does business in Overland Park, Kansas. Advisors Excel further alleges that ARS "intentionally directed tortious acts towards Kansas with knowledge that the injury suffered would be felt in Kansas."

II.

The standard that governs a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) is well established. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Edison Trust Number One v. Pattillo, 2010 WL 5093831 at *1 (D.Kan. Dec. 8, 2010). The extent of the burden depends on the stage at which the court considers the jurisdictional issue. Id. When personal jurisdiction "is decided at a preliminary stage by reference to only the complaint and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction." Id.

"The plaintiff may carry this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" Id. (quoting TH Agric. & Nutrition, L.L.C. v. Ace European Grp. Ltd., 488 F.3d 1282, 1286

2

(10th Cir. 2007)). In determining if it has personal jurisdiction over a defendant, the court may consider affidavits and other documentary evidence submitted by the parties. TH Agric. & Nutrition, 488 F.3d at 1286. To the extent allegations in the complaint are uncontroverted, the court must accept those allegations. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). If the jurisdictional allegations are challenged, however, the plaintiff has a duty to support its jurisdictional allegations by competent proof of supporting facts. Payless Shoesource, Inc. v. Shops at Hancock, LLC, 2012 WL 1344977 at * 1 (D.Kan. Apr. 18, 2012)(citing Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989)). Factual disputes are resolved in plaintiff's favor. Id.

### III.

The facts before the court are generally undisputed. The court allowed Advisors Excel to conduct some discovery on ARS' motion but Advisors Excel has not provided much to controvert any of the facts understood by the court at the time it issued its original memorandum and order.

ARS, an Iowa corporation, has its principal of business in Des Moines, Iowa. ARS has no other office locations. ARS does not lease or own property in Kansas. It has never incurred or paid any tax liability to the state of Kansas. ARS is not licensed or authorized to transact business in Kansas.

ARS is an insurance marketing organization. Its business focus is the recruitment of independent insurance agents to contract with certain insurance carriers with whom ARS has a contractual relationship with the goal that such agents will facilitate their clients' purchase of the carriers' life insurance and annuity products. These purchases generate the payment of commissions by the carriers to ARS and the independent agent.

Two independent insurance agents, one located in Maryland and the other located in California, contacted ARS Vice-President Russ Wagner in Iowa by e-mail and sought information about a specific product being marketed by Advisors Excel. In response, Wagner issued a "Product Alert E-Mail." ARS had never authorized such a transmission in the past, and did not authorize this one. The Product Alert E-Mail was sent to 177 addresses in 31 states from the addresses on Wagner's bulk independent agent-advisor e-mail address list. All of these agent-advisors were located outside of Kansas except for one, William Hull. Wagner did not know that Hull's e-mail address was still on his bulk agent e-mail address list when he transmitted the Product Alert, and he did not know that he was sending it to anyone in Kansas. Wagner did not have any producing agents in Kansas assigned to him at that time. Hull was no longer an active producing agent at the time that Wagner sent the e-mails. Wagner's last contact with Hull for any reason was on December 16, 2010, over

4

one year before the transmission of the Product Alert e-mail.

IV.

The court previously set forth the applicable law on personal jurisdiction in its prior order. The court will simply summarize most of what was stated in that order.

Here, based on diversity jurisdiction and federal question jurisdiction where the federal statute does not provide for nationwide service of process, "personal jurisdiction over a nonresident defendant is determined by the law of the forum state." Caldwell-Baker Co. v. S. Ill. Railcar Co., 225 F.Supp.2d 1243, 1259 (D.Kan.2002). "The proper inquiry is, therefore, whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution." Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304-05 (10th Cir. 1994). The Kansas long-arm statute extends the personal jurisdiction analysis to the extent of the United States Constitution; thus, this court may proceed to the due process analysis. Id. at 1305.[1]

The due process analysis consists of two steps: (1) whether the

---

[1] ARS has used part of its supplemental brief to raise arguments concerning the applicability of several provisions of the Kansas long-arm statute. The court finds it unnecessary to engage in any discussion of these provisions because we find that the due process analysis is dispositive of the pending motion.

5

defendant has such minimum contacts with the forum state that it should reasonably anticipate being haled into court there; and (2) if the defendant has minimum contacts with the forum state, whether exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice. AST Sports Sci., Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1061 (10th Cir. 2008).

Minimum contacts can be established by either general jurisdiction or specific jurisdiction. Previously, the court stated that Advisors Excel had not challenged ARS' contention that general jurisdiction over it was not present here. The supplemental memorandum filed by Advisors Excel again makes no claim that the court may exercise general personal jurisdiction over ARS. Accordingly, the court again finds no reason to consider this aspect of personal jurisdiction.

In its prior order, the court set forth the law on specific jurisdiction as it relates to this case as follows:

> The inquiry on specific jurisdiction is two-fold. First, the court must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." World-Wide Volkswagen v. Woodson, 444 U.S. 280, 297 (1980). Within this inquiry the court must determine (1) whether the defendant purposefully directed its activities at residents of the forum, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); and (2) whether the plaintiff's claim arises out of or results from "actions by the defendant himself that create a substantial connection with the forum state," Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987).

6

Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." Id. at 113. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. Id.

In the context of tort claims, "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1079 (10th Cir. 1995). Instead, to exercise specific jurisdiction over a defendant, the court must conduct a particularized inquiry into whether the defendant has "purposefully directed his activities at residents of the forum, and [whether] the litigation results from alleged injuries that arise out of or relate to those activities." Intercon,[Inc. v. Bell Atl. Internet Solutions, Inc.], 205 F.3d [1244] at 1247 [(10th Cir. 2000)](quoting Burger King Corp., 471 U.S. at 472).

The purposeful direction requirement is designed to protect an out-of-state defendant from being brought into court for merely "random, fortuitous, or attenuated contacts" with the forum state. Burger King, 471 U.S. at 475. In considering tort claims, purposeful direction may exist when defendant engaged in "(a) an intentional action. . .(b) expressly aimed at the forum state. . . with (c) knowledge that the brunt of the injury would be felt in the forum state." Dudnikov [v. Chalk & Vermmillion fine Arts, Inc., 514 F.3d [1063] at 1072 [(10th Cir. 2008)](interpreting Calder v. Jones, 465 U.S. 783 (1984)).

Advisors Excel, LLC v. American Retirement Systems, LLC, No. 12-4019, slip op. at pp. 5-7 (D.Kan. Dec. 11, 2012).

7

V.

Advisors Excel contends that ARS has a "connection" to Kansas in the following ways: (1) regularly solicits agents in Kansas; (2) sends marketing materials, contracts, and other business information to its agents in Kansas; (3) has independent agents operating in Kansas; (4) derives revenue from insurance policies sold in Kansas; (5) created a Product Alert that was one of a kind aimed at disparaging a known competitor in Kansas; (6) sent the Product Alert to an agent located in Kansas; and (7) knew that Advisors Excel would be harmed in Kansas.

With the aforementioned standards in mind, the court shall proceed to consider the record before the court and the arguments of the parties. The key issue is whether ARS purposely directed or expressly aimed at Kansas the specific activity allegedly giving rise to Advisor Excel's claims. In order to meet the purposeful availment prong, the court must examine whether ARS should have reasonably anticipated being haled into court in Kansas.

The court here has to consider the impact of an e-mail sent to the forum state. The court must further consider whether the e-mail was intentionally sent. The Tenth Circuit has likened e-mails to "phone calls, faxes, and letters made or sent by out-of-state defendants to forum residents." Shrader v. Biddinger, 633 F.3d 1235, 1247 (10th Cir. 2011). The Court further noted that these methods

8

of transmission have been found sufficient to support specific personal jurisdiction when they directly give rise to the cause of action. Id. Nevertheless, the Tenth Circuit recognized a distinguishing characteristic of e-mail:

> Although e-mail is directed to particular recipients, e-mail addresses typically do not reveal anything about the geographic location of the addressee. Thus, if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the e-mail itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived.

Id. at 1247-48(citation omitted).

The issue here concerning the transmission of e-mail is slightly different because of this case's unique circumstances. This is not the typical situation envisioned by the Tenth Circuit in Shrader where an e-mail is transmitted and the sender has no idea where the e-mails are being sent. Here, Wagner had some idea to whom he was transmitting the e-mails, i.e., agents of ARS. He, however, did not specifically know that William Hull remained on his list because Hull was no longer a producing agent for ARS. The record further shows that Wagner had no producing agents in Kansas at the time he sent the e-mail and that he did not intend to send any e-mail into Kansas. Advisors Excel has provided nothing to counter this evidence.

The unique circumstances of this case indicate that ARS did not "purposely direct" its conduct at Kansas. Advisors Excel has not

9

demonstrated that ARS expressly aimed its tortious conduct at Kansas. "Aiming" requires knowledge of where the "target" geographically exists. Advisors Excel has made an insufficient showing of knowledge by Wagner. The evidence is simply insufficient to demonstrate that ARS should have reasonably anticipated being haled into court in Kansas.

The other issues raised by Advisors Excel also do not suggest purposeful availment by ARS. Advisors Excel has attempted to broaden its theory of personal jurisdiction. Initially, Advisors Excel had suggested that its cause of action arose solely from the transmission of the Product Alert e-mail to a Kansas recipient. Now, Advisors Excel contends that the Product Alert was a "small part of a larger initiative to solicit and develop agents [by ARS] and do business in the State of Kansas." Thus, Advisors Excel appears to contend that the Product Alert was simply a part of ARS' business efforts in the state of Kansas. The court, however, fails to find support for Advisor Excel's argument. The record before the court fails to support any substantial efforts by ARS to do business in Kansas. There have some isolated responses by Kansas agents to ARS advertisements in national publications. But, there is no evidence to support Advisor Excel's contention that ARS was engaged in an "overall business strategy to acquire, develop and train agents" in Kansas.

The record before the court shows that ARS does not directly solicit agents in Kansas. Rather, it advertises in industry media. If an independent agent responds to these advertisements, the agent is placed in the ARS database. If there is a contact made thereafter by ARS with the independent agent, that contact is placed in the database. ARS does not contract with an individual agent. The independent agent completes an appointment form for one of the carriers that ARS represents. ARS then presents the independent agent to the carrier. If the carrier contracts with the agent, then ARS receives a small override from the carrier based on the agent's production.

The record fails to support Advisor Excel's contention that ARS has had 400 contacts with Kansas for the period January 2011 to February 2012 or that ARS has 97 agents or potential agents in Kansas. The record does show that for the period between January 2011 and February 2012, ARS facilitated only three contacts between insurers and independent agents in Kansas. None of these agents made sales for these insurers on which ARS received any override commission.

Advisors Excel has also argued that ARS' tortious conduct was expressly directed at Kansas because it was aware that the headquarters for Advisors Excel was located in Kansas. Under the Calder analysis, a court may consider a company's headquarters as the location in which it would feel the brunt of the injury. Thus,

11

Advisors Excel would have felt the brunt of the injury in Kansas. However, Advisors Excel has not demonstrated that ARS expressly aimed its tortious conduct at Kansas. There was only one e-mail sent to Kansas and the record shows that e-mail was not sent intentionally. The nature and degree of the other contacts ARS has had with Kansas were limited and have no relationship to the Product Alert that is subject of Advisors Excel's claims.

In sum, the court concludes that personal jurisdiction over ARS is lacking here due to absence of purposeful availment. The court shall grant ARS' motion to dismiss for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED** that defendant American Retirement Systems, LLC's motion to dismiss for lack of personal jurisdiction (Doc. # 16) be hereby granted.

**IT IS SO ORDERED.**

Dated this 23rd day of October, 2013, at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge